Dear Mr. Burson:
You advise this office that Mr. Jeff Morrow serves on the Board of Commissioners of St. Landry Parish Fire Protection District No. 1 (hereafter "the District"); he also serves as a volunteer firefighter for the District. On behalf of the District, you ask if any pertinent state law prohibits the District from paying Mr. Morrow the same rate paid other volunteer firefighters serving the District, which is $10.00 per hour for attending training sessions and responding to emergencies.
A firefighter holding a position of employment with the fire protection district is prohibited from serving on the same board which employs him. R.S. 42:64(A)(6) of the Dual Officeholding and Dual Employment Laws, R.S. 42:61, et seq., provides:
 Incompatible Offices
 A. In addition to the prohibitions otherwise prohibited in this Part, no other offices or employments shall be held by the same person in combination if any of the following conditions are found to pertain and these prohibitions shall exist whether or not the person affected by the prohibition exercises power in conjunction with other officers:
 **** (6) Funds received by one office or employment are deposited with or turned over to the other office or position.
See also Opinion 04-0074, in which this office concluded that a paid fire chief may not serve as board member on the same fire board which employs him. *Page 2 
The prohibitions contained within the dual officeholding statutes apply to an individual who holds two or more positions of public employment and/or appointive office as defined by law. The position of District board member constitutes "appointive office" for purposes of dual-officeholding.[1] A firefighter holds a position of public employment where he holds a "job compensated on a salary or per diem basis". See R.S. 42:62(3). However, a volunteer, nonsalaried firefighteris not a public employee of the district, nor does he hold a position ofemployment for purposes of the dual officeholding statutes. See Attorney General Opinions 07-0113 and 04-0002.
The question presented here is: at what point does payment by the District to a volunteer firefighter affect his volunteer status? If the payment is not "nominal" (as discussed below) then the firefighter does not qualify as a volunteer and is considered a public employee for purposes of the dual officeholding statutes.
The Louisiana statutes (R.S. 33:1991, et seq.) governing the minimum wages and maximum hours relative to firefighters "do not apply to voluntary unpaid members of fire departments". These provisions do not further elaborate upon a volunteer's status. See R.S. 33:1998.
The language of R.S. 23:1036(D)(4) of the Louisiana Labor and Workers' Compensation Law, R.S. 23:1021, et seq., provides more insight, as the statute defines volunteer firefighters as those who receive "nominal" or "no remuneration" for their services. This office has previously determined that "a reimbursement is allowable as long as it is nominal." See Attorney General Opinion 05-0097.
This office has also previously determined that a fire protection district "may pay its volunteer firefighters a flat fee for each emergency that they respond to during off hours". See Attorney General Opinion 01-62. However, the amount of the flat fee was not at issue in Opinion 01-62.
While state law does not specifically define what constitutes a "nominal fee," the federal regulations implementing the federal Fair Labor Standards Act provide guidance for determining whether a fee paid a volunteer[2] is nominal and permissible. 29 C.F.R. § 553.106 states: *Page 3 
 § 553.106 Payment of expenses, benefits, or fees.
 (a) Volunteers may be paid expenses, reasonable benefits, a nominal fee, or any combination thereof, for their service without losing their status as volunteers.
 (b) An individual who performs hours of service as a volunteer for a public agency may receive payment for expenses without being deemed an employee for purposes of the FLSA. A school guard does not become an employee because he or she receives a uniform allowance, or reimbursement for reasonable cleaning expenses or for wear and tear on personal clothing worn while performing hours of volunteer service. (A uniform allowance must be reasonably limited to relieving the volunteer of the cost of providing or maintaining a required uniform from personal resources.) Such individuals would not lose their volunteer status because they are reimbursed for the approximate out-of-pocket expenses incurred incidental to providing volunteer services, for example, payment for the costs of meals and transportation expenses.
 (c) Individuals do not lose their status as volunteers because they are reimbursed for tuition, transportation and meal costs involved in their attending classes intended to teach them to perform efficiently the services they provide or will provide as volunteers. Likewise, the volunteer status of such individuals is not lost if they are provided books, supplies, or other materials essential to their volunteer training or reimbursement for the cost thereof.
 (d) Individuals do not lose their volunteer status if they are provided reasonable benefits by a public agency for whom they perform volunteer services. Benefits would be considered reasonable, for example, when they involve inclusion of individual volunteers in group insurance plans (such as liability, health, life, disability, workers' compensation) or pension plans or "length of service" awards, commonly or traditionally provided to volunteers of State *Page 4 
and local government agencies, which meet the additional test in paragraph (f) of this section.
 (e) Individuals do not lose their volunteer status if they receive a nominal fee from a public agency. A nominal fee is not a substitute for compensation and must not be tied to productivity. However, this does not preclude the payment of a nominal amount on a "per call" or similar basis to volunteer firefighters. The following factors will be among those examined in determining whether a given amount is nominal: The distance traveled and the time and effort expended by the volunteer; whether the volunteer has agreed to be available around-the-clock or only during certain specified time periods; and whether the volunteer provides services as needed or throughout the year. An individual who volunteers to provide periodic services on a year-round basis may receive a nominal monthly or annual stipend or fee without losing volunteer status.
 (f) Whether the furnishing of expenses, benefits, or fees would result in individuals' losing their status as volunteers under the FLSA can only be determined by examining the total amount of payments made (expenses, benefits, fees) in the context of the economic realities of the particular situation.
While it is the policy of this office to decline to give opinions on the application of federal law, be advised that such opinions are routinely issued by the U.S. Department of Labor, Employment Standards Administration, Wage and Hour Division. In Wage and Hour Opinion Letter FLSA2006-28 (copy enclosed), the Department addressed what constitutes a "nominal fee" paid volunteer firefighters under the regulations:
 . . .Accordingly, nothing in the statutory language would directly preclude the payment of nominal per call or even per shift fees to volunteer firefighters as section 553.106(e) specifically provides that a nominal fee can be paid on a "per call" or similar basis for volunteer firefighters.
 Please also see Wage and Hour Opinion Letter FLSA2005-51 (Nov. 10, 2005) that contains a recent discussion of the Department's consideration of what payment constitutes a nominal fee for determining an individual's volunteer status. That opinion letter expounds upon the "economic realities" test in the context of school systems and those volunteering by assisting with extra-curricular activities, such as coaching sports or sponsoring various clubs. Specifically, this letter states that when a public agency employee volunteers as a coach or extracurricular advisor, the *Page 5 
Department will presume the fee paid is nominal as long as the fee does not exceed 20 percent of what the public agency would otherwise pay to hire a full-time coach or extracurricular advisor for the same services. This 20 percent rule is derived from the FLSA and implementing regulations. See Wage and Hour Opinion Letter FLSA2005-51 ("The FLSA and the implementing regulations use a 20 percent test to assess whether something is insubstantial with regard to prohibited driving on public roadways by employees who are 17 years of age."). A willingness to volunteer for 20 percent of the prevailing wage for the job is also a likely indication of the spirit of volunteerism contemplated by the 1985 amendments to the FLSA. We believe this interpretation of "nominal fee" applies equally in the context of firefighters.
 Finally, the regulations instruct that any nominal fees must be considered in the context of any other benefits or expenses paid and the economic reality of the particular situation. Indeed, section 553.106(f) sets forth the "economic realities" test, which specifically provides that the determination of whether the expenses, benefits or fees would preclude an individual from qualifying as a volunteer under the FLSA must be made by examining the total amount of payments in the context of the economic realities of a particular situation.
 * * * * * Applying the recent interpretation of "nominal fee" in Wage and Hour Opinion Letter FLSA2005-51, generally an amount not exceeding 20 percent of the total compensation that the employer would pay to employ a full-time firefighter for performing comparable services would be deemed nominal. Thus, in questions 1 through 6, a nominal fee could be 20 percent or less of the total compensation that County A would pay for the same services. Assuming the fee is determined to be nominal, it is less relevant whether it is paid on an annual, monthly or daily basis. As was stated in Wage and Hour Opinion Letter FLSA2005-51, the market information necessary to complete this good faith determination is generally within your members' knowledge and control. Any full-time firefighter a particular fire department has on its payroll would be a good benchmark for this calculation.
The District has authority to do those things necessary for fire prevention and protection. See R.S. 40:1499. It is within the authority of the District board to decide upon those expenditures, and in the context of your inquiry, the District, *Page 6 
having examined "the economic realities of a particular situation", must decide what payment to a volunteer firefighter is "nominal", in light of the criteria set forth in 29 C.F.R. § 553.106.
Insofar as those payments made to volunteer firefighters by the District are nominal, Mr. Morrow remains a volunteer firefighter and does not hold a position of public employment with the District. The prohibition of R.S. 42:64(A)(6) is inapplicable, and poses no obstacle to Mr. Morrow's continued service as member of the District board.
Mr. Morrow does hold public office as a member of the District board. Because Mr. Morrow's vote as District board member affects payments received by him as a volunteer firefighter, issues may be raised under the Code of Governmental Ethics. All such inquiries are resolved by the Louisiana State Board of Ethics. Correspondence seeking an opinion of the Board should be forwarded to 2415 Quail Drive, Baton Rouge, LA 70808, phone 225-763-8777.
An official opinion letter addressing what constitutes a "nominal fee" paid by the District to its volunteer firefighters may be obtained from the U.S. Department of Labor, Employment Standards Administration, Wage and Hour Division, Frances Perkins Building, 200 Constitution Avenue, NW, Washington, DC 20210 (1-877-889-5627). Current opinion letters concerning the FLSA are available on the U.S. Department of Labor website at http://www.dol.gov.
We hope the foregoing is helpful to you. Should you have other questions in which we may provide assistance, please contact this office.
 Very truly yours,
 JAMES D. "BUDDY" CALDWELL
 ATTORNEY GENERAL
 BY:__________________________
 KERRY L. KILPATRICK
 ASSISTANT ATTORNEY GENERAL
 KLK:arg *Page 1 
Dear Name*:
I am writing in reply to your Association's letter requesting guidance under the Fair Labor Standards Act (FLSA) on numerous hypothetical questions concerning "same type of services," "same public agency," and "nominal fee," as applied to individuals volunteering for, or employed by, a public agency.
The FLSA recognizes the generosity and public benefits of volunteering, and does not seek to pose unnecessary obstacles to bonafide volunteer efforts for charitable and public purposes. In this spirit, in enacting the 1985 FLSA Amendments, Congress sought to ensure that true volunteer activities are neither impeded nor discouraged. Congress, however, also wanted to minimize the potential for abuse or manipulation of the FLSA's minimum wage and overtime requirements in "volunteer" situations.
Section 3(e)(4)(A) of the FLSA and 29 C.F.R. §§ 553.101 and 553.103
(copies enclosed) indicate that an individual is a volunteer, not an employee of a public agency, when the individual meets the following criteria:
 1. Performs hours of service for a public agency for civic, charitable or humanitarian reasons, without promise, expectation or receipt of compensation for services rendered. Although a volunteer can receive no compensation, a volunteer can be paid expenses, reasonable benefits or a nominal fee to perform such services;
 2. Offers services freely and without pressure or coercion, direct or implied, from an employer; and
 3. Is not otherwise employed by the same public agency to perform the same type of services as those for which the individual proposes to volunteer.
Please be assured that this Administration fully supports volunteerism and is committed to working with organizations like yours to ensure that citizens are able to volunteer freely their services for charitable and public purposes consistent with the law.
Your letter posits factual circumstances that test whether volunteer status is jeopardized. The first series of questions — questions 1 through 9 — concerns payments that a public agency may provide a volunteer. We will address these questions under Scenario 1, below. The second *Page 2 
series of questions — questions 11, 14 and 15 — goes to the issue of providing the "same type of services" to the "same public agency."[1]
We will address these questions under Scenario 2, below.
Scenario 1
1. An individual serves as a volunteer firefighter for County A.
2. County A provides the volunteer with some monetary payment (or tax relief) calculated on a yearly, monthly, shift, or on-call basis.
3. The payment (or tax relief) varies based on factors such as the amount of time spent on the activities, length of service, number of calls, and number of shifts, but is not linked to expenses incurred by the volunteer.
Each question asks whether the particular payment negates volunteer status.
Section 3(e)(4)(A)(i) and the implementing regulations at29 C.F.R. § 553.106 (copy enclosed) provide that a volunteer may only be paid expenses, reasonable benefits, or a nominal fee, or any combination thereof, without losing volunteer status. Examples of permissible expenses or benefit payments are described as a payment for expenses, such as dry cleaning; an allowance for a requirement, such as a uniform; reimbursement for an out-of-pocket expense, such as transportation; a payment to provide materials, such as supplies; or a payment for benefits, such as participation in group insurance plans. See29 C.F.R. § 553.106(a)-(d).
Section 553.106(e) discusses what constitutes a nominal fee and the various factors to consider in determining whether a stipend is nominal. In the preamble to this provision of the regulation, the Department stated, "whether a specific amount is `nominal' depends on the economic realities of the situation and that no guidelines on specific amounts applicable to all (or even most) possible situations can be provided."See 52 Fed. Reg. 2012, at 2021 (Jan. 16, 1987) (copy enclosed).
While the statute and the implementing regulations do not define what constitutes a "nominal fee," the regulations provide guidance for determining whether a fee is nominal and permissible. If a fee is not nominal, then the individual does not qualify as a volunteer and is considered an employee who is covered by the FLSA minimum wage and overtime provisions. The factors to examine in making a determination of whether an amount is nominal include, but are not limited to: (1) the distance traveled and the time or effort required of a volunteer; (2) the availability — limited or unlimited — of a volunteer to provide services; and (3) the basis — as needed or throughout the year — on which a volunteer agrees to perform services. See 29 C.F.R. § 553.106(e). These factors focus upon whether the fee is actually more analogous to a payment for services or recompense for something performed and, hence, not nominal Thus, *Page 3 
to the extent that payments are tied to productivity (e.g., payment of hourly wages for services rendered), are similar to "piece rates" or are comparable to "production bonuses," there is a greater likelihood that such fees are not nominal. However, as noted in the preamble to section 553.106(e), almost 30 percent of all volunteer firefighters are paid a small fee for each fire call to which they respond, and the rule was not intended to invalidate that model. See 52 Fed. Reg. 2012, at 2021. Moreover, consistent with the discussion of factors to be considered (e.g., distance traveled, time and effort expended, around-the-clock versus limited availability, throughout the year versus upon request), compensation "per call" or other similar bases may be acceptable so long as they may fairly be characterized as tied to the volunteer's sacrifice rather than productivity-based compensation. Accordingly, nothing in the statutory language would directly preclude the payment of nominal per call or even per shift fees to volunteer firefighters as section 553.106(e) specifically provides that a nominal fee can be paid on a "per call" or similar basis for volunteer firefighters.
Please also see Wage and Hour Opinion Letter FLSA2005-51 (Nov. 10, 2005) (copy enclosed) that contains a recent discussion of the Department's consideration of what payment constitutes a nominal fee for determining an individual's volunteer status. That opinion letter expounds upon the "economic realities" test in the context of school systems and those volunteering by assisting with extra-curricular activities, such as coaching sports or sponsoring various clubs. Specifically, this letter states that when a public agency employee volunteers as a coach or extracurricular advisor, the Department will presume the fee paid is nominal as long as the fee does not exceed 20 percent of what the public agency would otherwise pay to hire a full-time coach or extracurricular advisor for the same services. This 20 percent rule is derived from the FLSA and implementing regulations. See Wage and Hour Opinion Letter FLSA2005-51 ("The FLSA and the implementing regulations use a 20 percent test to assess whether something is insubstantial with regard to prohibited driving on public roadways by employees who are 17 years of age."). A willingness to volunteer for 20 percent of the prevailing wage for the job is also a likely indication of the spirit of volunteerism contemplated by the 1985 amendments to the FLSA. We believe this interpretation of "nominal fee" applies equally in the context of firefighters.
Finally, the regulations instruct that any nominal fees must be considered in the context of any other benefits or expenses paid and the economic reality of the particular situation. Indeed, section 553.106(f) sets forth the "economic realities" test, which specifically provides that the determination of whether the expenses, benefits or fees would preclude an individual from qualifying as a volunteer under the FLSA must be made by examining the total amount of payments in the context of the economic realities of a particular situation. As your letter is silent on whether any other expenses and/or benefits are paid, the Department assumes there are no other benefits or expenses beyond the payments described in the questions.
The probative facts as we see them for each hypothetical question are set out below:
Q.1 The volunteer is paid $1,200 per year regardless of the number of shifts or amount of time spent responding to calls. On average the volunteer staffs a minimum of 24 shifts and/or spends a minimum of 60 hours responding to calls annually. *Page 4 
 Q.2 The volunteer is paid $100.00 per month regardless of the number of shifts or amount of time spent responding to calls. On average the volunteer staffs a minimum of 4 shifts and/or spends a minimum of 8 hours responding to calls monthly.
Q.3 The volunteer is paid $100.00 per month so long as the volunteer staffs a minimum of 2 shifts and/or spends a minimum of 5 hours responding to calls during the month. Additional payments of $25.00 are made for each additional shift over 4 during the month and/or for every 2.5 hours spent responding to calls exceeding 12 hours during the month.
Q.4 The volunteer is paid $25.00 (or $30.00 or $40.00) for each four-hour block of time regardless of the actual amount of time below four hours spent at the station house or responding to calls.
Q.5 The volunteer is paid $20.00 for each shift regardless of the length of the shift or the time spent responding to calls. On average, the volunteer works a 6 hour shift and/or spends 2 hours per shift responding to calls.
Q.6 The volunteer is paid $25.00 if the volunteer staffs a shift of at least 8 hours and/or spends 2.5 hours responding to calls. An additional $15.00 per shift is paid if the shift exceeds 8 hours or responds to calls over 5 hours during a single shift.
Q.7 An individual serves as a volunteer firefighter in Indiana. Indiana Code 36-8-12 defines "nominal" as an annual payment of not more than twenty thousand dollars ($20,000). The volunteer is paid an annual fee of $15,000. On average, the volunteer spends at least 3,000 hours per year waiting and responding to calls.[2]
 Q.8 The volunteer is paid a stipend of $20.00 per shift regardless of the length of the shift or the amount of time spent responding to calls during the shift. For every consecutive year of volunteer service in which the volunteer has staffed not less than 12 shifts per year, the volunteer is granted an additional stipend of $1.00 per shift regardless of the time spent responding to calls.
Q.9 The volunteer is provided with $1,500.00 personal property tax relief annually during the term of their volunteer service.
These questions, with the exception of question 9, specify payments to be made to the volunteer per shift, month, or year and the average number of shifts, calls, and/or hours worked by the volunteer. In some instances, additional payments are made if additional time above the required minimum is spent on shift or responding to calls. In other instances, payment increases depending on the number of years volunteered. Assuming there are no other payments or benefits provided and no other facts that bear on the question (out-of-pocket expenses, travel costs, uniform maintenance, etc.), these payments may qualify as nominal fees under § 553.106. *Page 5 
Generally, a key factor in determining if a payment is "substitute for compensation" or "tied to productivity" is "whether the amount of the fee varies as the particular individual spends more or less time engaged in the volunteer activities." Wage and Hour Opinion Letter FLSA2005-51. If the amount varies, it may be indicative of a substitute for compensation or tied to productivity and therefore not nominal. See id.; see also29 C.F.R. § 553.106(e). However, as noted above, there is a specific allowance for volunteer firefighters to be paid on a "per call" or similar basis consistent with certain factors denoting the relative sacrifice of the volunteer. See 29 C.F.R. § 553.106(e). Due to this specific allowance, and assuming there are no other facts showing that the payments in your hypothetical situations are a substitute for compensation or tied to productivity, it still must be determined if the payments are nominal amounts.
Applying the recent interpretation of "nominal fee" in Wage and Hour Opinion Letter FLSA2005-51, generally an amount not exceeding 20 percent of the total compensation that the employer would pay to employ a full-time firefighter for performing comparable services would be deemed nominal. Thus, in questions 1 through 6, a nominal fee could be 20 percent or less of the total compensation that County A would pay for the same services. Assuming the fee is determined to be nominal, it is less relevant whether it is paid on an annual, monthly or daily basis.[3]
As was stated in Wage and Hour Opinion Letter FLSA2005-51, the market information necessary to complete this good faith determination is generally within your members' knowledge and control. Any full-time firefighter a particular fire department has on its payroll would be a good benchmark for this calculation. Absent such information, a fire department or similar entity may look to information from neighboring jurisdictions, the state, or ultimately, the nation, including data from the Department of Labor, Bureau of Labor Statistics. Thus, for example, if a volunteer staffs three shifts during a month, a nominal fee should not exceed 20 percent of what it would cost to employ a full-time firefighter to staff a period to cover the equivalent of the three shifts.
Question 7 involves $15,000 per year for volunteers who on average spend at least 3,000 hours waiting for or responding to calls. Assuming the payment does not vary depending on the productivity of the volunteer or whether the volunteer spends more or less time on volunteer activities, the payment of $15,000 might qualify as "nominal" under the 20 percent rule if County A would otherwise need to pay $75,000 or more to hire a full-time firefighter to perform the same services. However, it is unlikely that 3,000 hours of service (50+ hours per week) is "volunteering" rather than employment. Indeed, without knowing additional facts and circumstances about the economic realities of the locality, a payment of $15,000 for 3,000 hours of volunteer services arguably constitutes compensation for a full-time job rather than a "nominal fee" for volunteering.
Similarly, Question 8 involves increased payment for every year the volunteer staffs a requisite number of shifts. Without additional facts, we are unable to say definitively whether this increased payment represents compensation via a seniority or productivity system based on *Page 6 
services rendered, and is thus not permitted, or, applying the test described above, is a "nominal fee" for volunteerism.
Question 9, involving tax relief of $1,500 on personal property taxes, would appear to constitute a permissible "reasonable benefit" and thus need not be evaluated as a "nominal fee." Provision of such a benefit will not, in and of itself, preclude bona fide volunteer status.
Scenario 2
You have also posed questions similar to those raised in your letter of September 16, 2002, which we responded to in April 2003, that concern whether the volunteer services are for the same public agency and/or are the same type of services the volunteer is employed by that public agency to provide. See Wage and Hour Opinion Letter FLSA2003-2 (Apr. 14, 2003) (copy enclosed). Questions 11, 14, and 15 all concern these issues. We assume for each Question that the person is providing volunteer services for civic, charitable or humanitarian purposes and without any expectation or receipt of compensation and the services are volunteered without any pressure or coercion from an employer. You posit the following facts:
1. The individual in question is employed by County A, a public agency.
2. The individual seeks to volunteer either for County A, a public agency, or a joint powers board funded by both City A and County A.
In order to determine whether a person is a bona fide volunteer under section 3(e) of the FLSA (copy enclosed), if the volunteer is employed by a public agency it is necessary to assess whether the volunteer is employed by the same agency for whom the services are provided and the services provided are the same services the volunteer is employed to provide. As noted in Wage and Hour Opinion Letter FLSA2003-2, if an individual is not employed by the same public agency (what you call the "who is an employer" question), then it is not necessary to examine the nature of the services provided (what you call the "what are the same type of services" question). Similarly, if the individual does not perform the same type of services for the public agency, there is no need to examine the relationship of the agency receiving the individual's volunteer services to the individual's employer.
As stated in our prior opinion letter, whether two entities of a local government constitute the same public agency can only be determined on a case-by-case basis. Among the factors to be considered is whether the Census of Governments issued by the Bureau of the Census, U.S. Department of Commerce, treats the two agencies separately for statistical purposes. See 29 C.F.R. § 553.102 (copy enclosed). In addition to the Census of Governments, the attached Wage and Hour Opinion Letter FLSA2002-3 (June 7, 2002) provides a framework for making such a determination and identifies factors that are relevant to the determination. As indicated in Wage and Hour Opinion Letter FLSA2003-2, there are a number of relevant factors to consider, such as: whether the two agencies have separate payroll and retirement systems; whether they both have the authority to sue and be sued in their own names; whether they have separate hiring and other employment practices; and how they are treated under state law. See also Wage and Hour Opinion Letter FLSA2006-13 (Apr. 28, 2006) (City firefighters may *Page 7 
volunteer to County Fire Protection District that has separately elected Board; separate funding sources; separate payroll, benefits and retirement systems; can levy taxes and exercise eminent domain; can sue and be sued; and is treated separately by the Census) (copy enclosed).
If those other factors demonstrate that the agencies should be treated as separate entities, or if the Census of Governments treats the agencies described in questions 11, 14 and 15 as separate agencies, then our opinion is that they are not the same employer and an employee of one could volunteer to provide services of any nature for the other public agency.
Even if the public agency for which the person seeks to volunteer is the volunteer's employer, volunteer services may still be provided so long as the services are not the same type of services the volunteer is employed to provide. For instance, a firefighter may not volunteer as a firefighter for the same public agency. On the other hand, an employee of the city parks department may offer to volunteer as a firefighter, or a police officer may volunteer to referee in a basketball league sponsored by his employing city. See 29 C.F.R. § 553.103.
Much like the determination of "same public agency," whether the service the volunteer seeks to provide is the "same type of services" the individual is employed to perform can only be determined after "consideration of all the facts and circumstances in a particular case[.]" See 29 C.F.R. § 553.103(a). The regulations define "same type of services" to mean similar or identical services. Id. Among the facts considered is how the volunteered services and the services that the volunteer is employed to provide are classified by the three digit categories of occupations in the Dictionary of Occupational Titles.
Further, in addition to the Dictionary of Occupational Titles, one must also consider whether the volunteer services are "closely related to the actual duties performed by or responsibilities assigned to the employee."Id. An additional source of information about occupational categories is found in O*NET, available at http://www.doleta.gov/programs/onet/. The O*NET system, created and maintained by the Department of Labor's Employment and Training Administration, is a unique, powerful source for continually updated information on skill requirements and occupational characteristics.
With these qualifications in mind, we will now address in turn each question under Scenario 2.
Q.11 An individual is employed as a mechanic by the County A Parks Department. He also volunteers as a firefighter for the County Fire and Rescue Department, a joint powers board funded by County A and City A. He is granted paid leave while responding to calls as a volunteer.
A.11 This scenario resembles that outlined in your September 16, 2002, letter which the Department answered in Wage and Hour Opinion Letter FLSA2003-2. As discussed more fully therein, the determination of whether the mechanic is a bona fide volunteer turns in part on whether the County A Parks Department and the County A Fire and Rescue Department are the same public agency. We refer you to the discussion of the factors to consider in making this determination as outlined in Wage and Hour Opinion Letter FLSA2003-2.
Assuming the County A Parks Department and the Fire and Rescue Department are separate agencies, the fact that the Parks Department allowed its employee to cease his usual duties to *Page 8 
respond to fire calls and paid the employee for his normal work hours spent on such calls, would not make the mechanic an employee of the Fire and Rescue Department. However, such special leave would be compensable hours worked for the Parks Department and would have to be counted when computing total hours worked for the Parks Department for purposes of overtime. If the employee substitutes paid personal leave earned with the Parks Department — which the employee may use as the employee sees fit, including for time spent as a volunteer firefighter — for the time off spent in volunteer activities, then the individual's status as a bona fide volunteer to the Fire and Rescue Department is not jeopardized and the hours would not be compensable hours worked for the Parks Department for overtime purposes.
Conversely, as explained in Wage and Hour Opinion Letter FLSA2003-2, if the County Parks Department and the Fire and Rescue Department are part of the same public agency, and the County grants special leave for the hours the employee works as a firefighter without requiring him to use his personal accrued leave (which would be considered compensable hours worked for the County as discussed above), then the County employs him as both a mechanic and as a firefighter. In essence, because the County releases him from his normal mechanic duties and shift only if he spends the specified time performing alternative firefighting duties and pays him wages for the time worked, he is employed by the County as both a full-time mechanic and as a part-time firefighter. Therefore, such time would be compensable hours worked for the County Parks Department and would have to be counted when computing total hours worked for purposes of overtime. Moreover, he would not be able to serve additional hours as a "volunteer" firefighter for the County because of the statutory prohibition against an employee volunteering to his own agency to perform the same type of services he is employed to perform. However, even if the Park Department and Fire and Rescue Department are not separate agencies, if the employee substitutes paid personal leave earned — which the employee may use as the employee sees fit, including for time spent as a volunteer firefighter — for the time off spent in volunteer activities that are not the "same type of service," then the individual's status as a bona fide volunteer is not jeopardized and the hours would not be compensable hours worked for the Parks Department for overtime purposes.
Q.14 Firefighter, cross-trained and licensed as an EMT/paramedic, is employed by County A Fire and Rescue Department. The Fire and Rescue Department is not licensed to nor does it provide advanced life support, although it does respond to medical emergencies, accidents, and fires as first responders. The County A Department of Emergency Medical Services is licensed and required to provide advanced life support services as first responders. Firefighter serves as a volunteer EMT/Paramedic for the County A Department of Emergency Medical Services.
A.14 Similar to question 11, the determination of whether the firefighter, who is cross-trained and licensed as an EMT/Paramedic, is a bona fide volunteer turns in part on whether the County A Fire and Rescue Department and the County A Department of Emergency Medical Services are the same public agency. Again, we refer you to the discussion of this question in Wage and Hour Opinion Letter FLSA2003-2. Generally, "the government of a political subdivision, e.g., county, city, etc., with all of its departments and agencies, constitutes a single employer under the Act." Field Operations Handbook § 10c11 (a) (copy enclosed). Although somewhat limited, it appears likely that the regulations provide that "[p]ublic safety employees taking on any kind of security or safety function within the same local government are never *Page 9 
considered to be employed in a different capacity."29 C.F.R. § 553.30(c)(3) (copy enclosed). This is based on the 1985 legislative history instructing the Department to interpret the phrase working in a different capacity "in the strictest sense" with regard to public safety employees. See House Report No. 99-391, October 24, 1985, p. 25; Wage and Hour Opinion Letters FLSA2004-26NA (Oct. 29, 2004) and FLSA2004-25NA (Oct. 22, 2004) (copies enclosed). Therefore, we have previously concluded that an individual employed as a fire marshal could not volunteer as a firefighter for the same employer (Wage and Hour Opinion Letter September 3, 1999) (copy enclosed), and that firefighter/EMS employees could not volunteer as tactical EMS medics for their employer's police department SWAT team (see Wage and Hour Opinion Letter August 19, 1999) (copy enclosed).
Your letter provides no specific information regarding whether state law and the Census treat the County A Department of Emergency Medical Services as a separate public agency, including whether its payroll retirement and other personnel systems are separate, and whether it may sue and be sued in its own name. Additionally, you provide no evidence concerning the extent to which the County A Fire and Rescue Department exercises day-to-day control, if at all, over the volunteer services provided to the County A Department of Emergency Medical Services. Consequently, we are unable to determine if the entities should be considered the same public agency. If the agencies are determined to be separate public agencies under the FLSA, it is not necessary to determine if the individuals perform the same type of services.
However, in the event the agencies were not separate, while your scenario provides that there are some differences in the type of services provided in each role, there is insufficient information on the total scope of services in each role to make a "same type of services" determination, and, consequently, we are unable to provide a definite response to this question for that reason also.
Q.15 Police Officer is employed by County A Bureau of Police, where he responds to medical emergencies, accidents, and fires as a first responder but provides no medical or life support. The Police Officer also volunteers for County A Fire and Rescue Department (a joint powers board of County A and City A) where he responds to medical emergencies, accidents and fires and provides medical and other life support.
A.15 Again, the determination of whether the police officer, who is a first responder, is a bona fide volunteer turns in part on whether the person is volunteering for the same public agency that employs the individual as a police officer and, if so, whether the volunteered services are the same as those the person is employed to provide. We refer you to the discussion of the factors to consider in making this determination as outlined in Wage and Hour Opinion Letter FLSA2003-2. Again, a "same type of services" determination can be made only after an examination of all the facts and circumstances of a particular case. We assume that, even though both agencies respond to the same types of emergencies, the Bureau of Police does not provide medical or life support services that the Fire and Rescue Department provides. It is our general position that the definition of "same type of services" typically allows for a determination that police and firefighters provide a different type of service, consistent with their different Dictionary ofOccupational Titles categories. As explained in Wage and Hour Opinion Letter FLSA2003-2, merely responding to the same emergencies, such as traffic *Page 10 
accidents and fire calls, or acting as a medical first responder on occasion will typically not change the inherent difference in the two occupations. Accordingly, while we believe, for the reasons cited, that the police officer described in your scenario probably may volunteer as a firefighter without incurring FLSA wage liability, without more information on the relationship of the agencies, we are constrained in providing a definitive answer on this question.
We are also enclosing a copy of Wage and Hour Opinion Letter July 7, 1999 that addresses issues very similar to those raised in this and your September 16, 2002 letter. This letter may provide further guidance to you and your members concerning the volunteer issue.
This opinion is based exclusively on the facts and circumstances described in your request and is given based on your representation, express or implied, that you have provided a full and fair description of all the facts and circumstances that would be pertinent to our consideration of the question presented. Existence of any other factual or historical background not contained in your letter might require a conclusion different from the one expressed herein. You have represented that this opinion is not sought by a party to pending private litigation concerning the issue addressed herein. You have also represented that this opinion is not sought in connection with an investigation or litigation between a client or firm and the Wage and Hour Division or the Department of Labor.
We trust you will find the above discussion and analysis responsive to your request. Sincerely,
Alfred B. Robinson Jr.
Acting Administrator
[1] The St. Landry Fire Protection District No. 1 is "a public corporation and political subdivision of the state". See Article 1, Sec. 9-2 of the St. Landry Parish Home Rule Charter; see also R.S.40:1500(A). Appointments to the board governing the fire protection district are made pursuant to R.S. 40:1496. Because the office is "specifically authorized by the constitution or laws of this state or by the charter or ordinances of any political subdivision thereof" and is "filled by appointment" of the police jury, the position constitutes an "appointive office" as defined by R.S. 42:62(2).
[2] 29 USCA 203(e)(4)(A) states:
(4)(A) The term "employee" does not include any individual who volunteers to perform services for a public agency which is a State, a political subdivision of a State, or an interstate governmental agency, if — (i) the individual receives no compensation or is paid expenses, reasonable benefits, or a nominal fee to perform the services for which the individual volunteered; and (ii) such services are not the same type of services which the individual is employed to perform for such public agency.
* Note: The actual name(s) was removed to preserve privacy in accordance with 5 U.S.C. § 552(b)(7).
[1] In a conversation with our staff subsequent to your letter, you withdrew original questions 7, 8, 10, 12, and 13 and replaced them with two new questions. These new questions are reproduced here as new questions 7 and 8. There are no longer any questions 10, 12, or 13.
[2] In a conversation with our staff subsequent to your letter, you withdrew questions 7, 8, 10, 12, and 13 and replaced them with two new questions. These new questions are reproduced here as new questions 7 and 8.
[3] The Department has withdrawn Wage and Hour Opinion Letters September 17, 1999, April 2, 1992, and July 15, 1988 to the extent they are inconsistent with the interpretation of nominal fee in this opinion.